# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ROBERTA AUSTIN, | Case No.:1:15-cv-00015-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Respondent. | |

Pending before this Court is Petitioner Roberta Austin's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for disability and disability insurance benefits. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On February 2, 2012, Roberta Austin ("Petitioner") filed an application for Title XVI disability benefits, and, on February 8, 2012, an application for Title II disability insurance benefits – Petitioner alleged disability beginning December 22, 2011. These claims were initially denied on April 20, 2012 and, again, on reconsideration on August 9, 2012. On September 15, 2012, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 1, 2013, ALJ John T. Molleur held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Matt Steen, appeared and testified. Impartial vocational expert, Kent Graham, also appeared and testified during the same May 1, 2013 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On June 5, 2013, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on June 24, 2013 and, on November 10, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions of law made by the [ALJ] and the Appeals Council that Petitioner was not under a disability are incorrect and contrary to the laws and regulations of the Social Security Act."  Pet. for Review, p. 6 (Docket No. 1).  In particular, Petitioner contends that (1) the ALJ erred in his assessment of Petitioner's credibility; (2) the ALJ erred in assigning little weight to Petitioner's treating physicians; and (3) in light of these errors, the ALJ failed to properly establish that Petitioner is able to do work that exists in significant numbers in the national economy.  *See* Pet.'s Brief, p. 2 (Docket No. 16).  Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits, or, alternatively, remand the case for further proceedings and award attorneys' fees.  *See* Pet. for Review, pp. 6-7 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual

**MEMORANDUM DECISION AND ORDER - 2**

decisions, they must be upheld, even when there is conflicting evidence.  *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

**MEMORANDUM DECISION AND ORDER - 3**

*See id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## II.  DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  *See* 20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  *See* 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 22, 2011, the alleged onset date.  *See* (AR 27).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or

combination of impairments is "severe" within the meaning of the Social Security Act if it

significantly limits an individual's ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe"

when medical and other evidence establish only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on an individual's ability to work.

*See* 20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically

determinable impairment or combination of impairments, disability benefits are denied.  *See* 20

C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe

impairments: "fibromyalgia, degenerative dis[c] disease of the lumbar and cervical spine,

diabetes mellitus, migraine headaches, schizoaffective disorder, post-traumatic stress disorder

("PTSD"), general anxiety disorder, and bipolar disorder."  (AR 27-28).

  The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet

nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and

the evaluation proceeds to step four.  *See id.*  Here, the ALJ concluded that Petitioner's above-

listed impairments, while severe, do not meet or medically equal, either singly or in combination,

the criteria established for any of the qualifying impairments.  *See* (AR 28-30).

  The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 5**

relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the RFC "to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)," except she can:

> perform all postural activities occasionally and is limited to only occasional overhead reaching with both upper extremities.  Additionally, the [Petitioner] is limited to only frequent handling and fingering with both upper extremities.  Furthermore, the claimant should have no direct exposure to vibration.  The claimant is limited to only frequent interaction with co-workers and supervisors, but can have no contact with the general public.  Moreover, her work is limited to a low stress environment with only occasional decision-making or changes in the work setting.

(AR 30-36).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Petitioner is unable to perform any past relevant work.  *See* (AR 36).  However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner

**MEMORANDUM DECISION AND ORDER - 6**

can perform, including washroom operator, waxer, and hand mounter.  *See* (AR 36-37).

Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded

that Petitioner "has not been under a disability, as defined in the Social Security Act, from

December 22, 2011, through the date of this decision."  (AR 37).

**B.     Analysis**

        Petitioner asks the Court to reverse the ALJ's Decision "due to both the ALJ's

consideration of Austin's credibility and his assignment of weight to the opinions of her treating

physicians[;] [c]orrect evaluation of both these factors under the law results in such a restrictive

RFC, that the occupational base is entirely eroded, and the ALJ cannot establish the presence of

any employment that [Petitioner] can perform on a regular and continuing basis."  Pet.'s Brief, p.

7 (Docket No. 16).  The undersigned considers these arguments below – preliminarily

considering the ALJ's analysis of Petitioner's treating physicians' opinions because of its

possible interplay with (and effect upon) the ALJ's assessment of Petitioner's credibility.

        1.      The ALJ Properly Considered Petitioner's Treating Physicians' Opinions

        The medical opinion of a treating physician is entitled to special consideration and

weight.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  Such deference is warranted

because the treating physician "is employed to cure and has a greater opportunity to know and

observe the individual."  *Id*.  However, a treating physician's opinion is not necessarily

conclusive.  *See id*. at 762.  If the treating physician's opinions are not contradicted by another

doctor, they may be rejected only for clear and convincing reasons.  *See Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by

another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons

**MEMORANDUM DECISION AND ORDER - 7**

supported by substantial evidence in the record.  *See id.*  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Petitioner argues that the ALJ failed to give proper weight to his treating physicians' opinions, including those from Bryan Wright, DPT, Ryan Melvin, DO, and Ronald Cantone, PsyD.  *See* Pet.'s Brief, pp. 14-18 (Docket No. 16).  The Court addresses each of these arguments below.

       a.     *Bryan Wright, DPT*

Petitioner argues that Dr. Wright stated that Petitioner "medically needs a cane and cannot walk a block at a reasonable pace or on rough or uneven surfaces, demonstrating an inability to ambulate effectively . . . ."  *Id.* at p. 15 (citing (AR 690) (Dr. Wright indicating that Petitioner (1) could sit, stand, and walk for a total of 30 minutes each, in an 8-hour workday, and (2) could only ambulate 3-4 steps without the use of a cane).  According to Petitioner, the ALJ improperly rejected Dr. Wright's opinions in these respects.  *See id.* at pp. 14-18.  The undersigned disagrees.

At the outset, although Dr. Wright is referred to as a Doctor of Physical Therapy, such a position is not an "acceptable medical source" as defined by the Social Security regulations.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *compare with* 20 C.F.R. §§ 404.1513(d), 416.913(d) (discussing "other sources").  ALJs may not discount "other" medical sources without explanation, but less weight may be afforded such medical sources if the ALJ provides "germane" reasons.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  It is sufficient if an "ALJ at least noted arguably

**MEMORANDUM DECISION AND ORDER - 8**

germane reasons for dismissing [other source] testimony, even if he did not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Germane reasons include the fact that an opinion is inconsistent with objective medical evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Dr. Wright's opinions were considered but ultimately given little weight by the ALJ, owing to their incongruity with the balance of other medical evidence in the record. *See* (AR 35) ("Little weight is given to this overly restrictive opinion, as it is inconsistent with the evidence of record indicating that although the [Petitioner] experienced myofascial trigger point tenderness and reduced range of motion in her cervical and lumbar spine, she maintained 4 out of 5 strength throughout her upper and lower extremities bilaterally and exhibited a normal gait and station.") (citing (AR 398-99, 404-05, 410-11, 422-23, 438-39, 450-51, 461-62)); *see also infra*. This explanation is sufficiently germane to Dr. Wright's opinions to satisfy the explanation required of the ALJ in order to discount "other" medical source opinions.

      *b.*    *Ryan Melvin, D.O.*

On January 29, 2013, Dr. Melvin submitted a "Residual Functional Capacity Questionnaire." *See* (AR 708-09). Dr. Melvin indicated that Petitioner suffered from "chronic low back pain," with the following "functional limitations":

- Walking two city blocks without rest or significant pain;

- Sitting more than 45 minutes at a time for a total of two hours in an 8-hour workday;

- Standing/walking more than 45 minutes for a total of two hours in an 8-hour workday;

- Needing to shift positions and take ten unscheduled 15-minute breaks per day;

**MEMORANDUM DECISION AND ORDER - 9**

- Frequently lifting/carrying 10 pounds or less, occasionally lifting/carrying 20 pounds, and never lifting/carrying 50 pounds or more; and

- Using her right hand 25% of the time and her left hand 15% of the time (to grasp, turn, and twist objects) during an 8-hour workday; using her right fingers 75% of the time and her left fingers 65% of the time (for fine manipulation) during an 8-hour workday; and using her right and left arms 10% of the time (for reaching) during an 8-hour workday.

*See id.* Ultimately, Dr. Melvin opined that Petitioner would miss more than four days of work each month because of impairments, and that she would be incapable of working an 8-hour day, five days a week, on a sustained basis. *See id.*

In his Decision, the ALJ gave Dr. Melvin's opinions in these respects "little weight" because, he wrote, "the severe limitations are not supported by the evidence of record . . . ." (AR 35). Petitioner takes issue with this, arguing that the ALJ's reasons for rejecting Dr. Melvin's opinions[1] "do not satisfy the 'substantial evidence' standard." Pet.'s Brief, p. 15 (Docket No. 16). The Court's own review of the record supports the ALJ's decision to diminish the import of these particular findings.

First, to the extent Dr. Melvin definitively considered Petitioner disabled as of January 29, 2013, such an opinion on the ultimate issue here (at least as that term is used within the meaning of the Social Security Act) is neither conclusive nor binding upon the ALJ. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989); *see also* SSR 96-5p, *available at* 1996 WL 374183, *2 (the "final responsibility for deciding [whether an individual is 'disabled' under the Social Security Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1),

---

[1] In giving little weight to Dr. Melvin's January 29, 2013 opinions, the ALJ provided the same reasons as the ones supplied for Dr. Wright's opinions. That is not a basis for rejecting his reasons, so long as the supplied reasons apply equally in each instance.

**MEMORANDUM DECISION AND ORDER - 10**

416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Second, turning to Dr. Melvin's treatment notes over time, they do not neatly align with the physical limitations he ultimately assigns to Petitioner in the "Residual Functional Capacity Questionnaire."  There is reference in the notes that Petitioner is grappling with back pain, fibromyalgia, diabetes mellitus, and migraine headaches.  But whether Petitioner suffers from these impairments is not at issue here.  To be clear, the ALJ found in no uncertain terms that these very impairments were "severe," and that Petitioner's residual functional capacity is negatively impacted.  *See supra* (citing (AR 27-28)).  And, for the most part, these treatment notes reflect Petitioner's periodic subjective complaints of pain; however, largely absent from such notes are any corresponding opinions or findings from Dr. Melvin (1) paralleling the opinions reached (in the "Residual Functional Capacity Questionnaire") as to Petitioner's alleged functional limitations, or (2) quantifying in any consistent degree Petitioner's pain statements and resultant limitations.  *See, e.g.*, (AR 33) (ALJ noting in Dr. Melvin's June 30, 2012 treatment note that "[Petitioner's] extremities were well perfused with no clubbing, cyanosis, or edema" and that "multiple follow-up examinations in February 2012, March 2012, May 2012, and June 2012 yielded similar unremarkable results.") (citing (AR 481, 492, 494, 499, 504, 509)).

Finally, Dr. Melvin's treatment notes immediately following January 29, 2013, arguably paint a very different picture from the one contained in the "Residual Functional Capacity Questionnaire."  For example:

- 2/25/13:  "Pain Assessment: Patient denies any pain . . . Normal gait and station.  Normal neck alignment and mobility.  Normal spine alignment and mobility, no deformity.  Normal [range

**MEMORANDUM DECISION AND ORDER - 11**

of motion] and strength, no joint swelling or tenderness.  Well perfused. . . .  Joint mobility within normal limits.  Gait and balance within normal limits."  (AR 752-53).

- 2/28/13   "Pain Assessment: Patient denies any pain . . . .  Extremities: Well perfused."  (AR 746).

- 3/5/13   "Pain Assessment: Patient denies any pain . . . .  Extremities: Well perfused."  (AR 738).

Third, Dr. Melvin's opinions (at least the ones drawn from the "Residual Functional Capacity Questionnaire") do not exist in isolation.  Medical consultants John Crites, M.D. and Thomas T. Coolidge, M.D. opined that Petitioner was capable of sedentary work with some non-exertional limitations:

We have carefully reviewed all the evidence in your file.  Records showed that you do have back problems, heart problems, migraines, and depression.  Records also showed that you are able to walk, use your extremities satisfactorily, lift, carry, and handle light objects, care for your personal needs, and think and act in your own interest.

Your condition results in some limitations in your ability to perform work related activities.  However, these limitations do not prevent you from performing work you have done in the past as a bookkeeper, as normally performed in the national economy.  We have determined that your condition is not severe enough to keep you from working.  We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.

***

The  medical evidence shows that you have a history of these conditions.  Upon exam, your heart rate is regular.  Lungs are clear.  The evidence does not show severe neurological deficits or muscle weakness.  You are able to walk and move about independently.  Cognition and memory are intact.  You are able to think and reason.  While your condition does cause you pain and requires treatment and monitoring, it is determined that it should not prevent you from doing all types of work.

Your condition results in some limitations in your ability to perform work related activities.  However, these limitations do not prevent you from performing work you have done in the past as a bookkeeper, as normally performed in the national

**MEMORANDUM DECISION AND ORDER - 12**

economy.  We have determined that your condition is not severe enough to keep you from working.  We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability too work.

(AR 92-102, 104-116).[2]

There is no challenge here to the fact that Petitioner has a multitude of issues surrounding her back pain; rather, the focus is upon the lack of corroboration in the medical record (including Dr. Melvin's own treatment notes) to the substantial limitations provided in the June 29, 2013 "Residual Functional Capacity Questionnaire."  This is what the ALJ meant when stating that "[Dr. Melvin's] opinion as to the severe limitations are not supported by the evidence of record." (AR 35).  The undersigned agrees, finding that the ALJ provided clear and convincing reasons for rejecting Dr. Melvin's opinions.  This is not to say that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; to be sure, Petitioner appropriately identifies conflicting evidence in support of her position.  While such conflicting evidence may not have been as favorably received as Petitioner naturally hoped, the ALJ's decision to question Dr. Melvin's disability opinion contains appropriate reasons for doing so. As required by controlling law, the ALJ will not be second-guessed in this respect.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's

---

[2]  The ALJ actually departed from Drs. Crites's and Coolidge's opinions in part, finding instead that Petitioner is unable to perform any past relevant work.  *See* (AR 36); *see also* (AR 35) ("Although the undersigned finds slightly different limitations than the state agency physicians based on the record as a whole, the undersigned reasons that the state agency's findings are consistent with the determination that the claimant is capable of significant work-related activities.").

**MEMORANDUM DECISION AND ORDER - 13**

decision.") (internal citations omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

        c.     *Ronald Cantone, Psy.D.*

Within an April 8, 2013 "Mental Capacity Assessment," Dr. Cantone remarked that Petitioner had moderate limitations in her ability to interact socially and moderate limitations in her ability to sustain concentration and persistence which markedly impacted her ability to complete a normal workday/workweek. *See* (AR 764-66). The ALJ, however, assigned "little weight" to these opinions, "given the lack of medical evidence supporting such severe limitations." (AR 35) ("[I]t appears that the doctor's opinion is based primarily on the claimant's subjective allegations. Overall, the doctor's overly restrictive opinion is inconsistent with the evidence of record indicating that with the exception of a few exacerbations, the [Petitioner's] thought processes and speech were normal and her insight and judgment were good.") (citing (AR 680, 727, 759)).

An ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." *See, e.g.*, *Molina*, 674 F.3d at 1111 (9th Cir. 2012); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (observing that the regulations "give more weight to opinions that are explained than to those that are not."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible [(*see infra*)]."); *Ellison v. Colvin*, 2014 WL 4853126, *6 (D. Idaho 2014) ("When a physician relies on Petitioner's subjective

**MEMORANDUM DECISION AND ORDER - 14**

complaints, which the ALJ properly discounted in an adverse credibility determination, that is a legally sufficient reason on which the ALJ could properly rely to accord less weight to [physician's] opinion.")  Because Dr. Cantone's opinions in his "Mental Capacity Assessment" appear to be mere reflections of Petitioner's subjective complaints, the ALJ did not err in calling their import into question.

These opinions also are disconnected with Dr. Cantone's own December 5, 2012 "Comprehensive Diagnostic Assessment" ("Assessment") of Petitioner.  At that time, Dr. Cantone documented Petitioner's depression, hypomania, anxiety, and PTSD.  (AR 683).  But, again, these findings are not disputed; the ALJ already found that Petitioner suffered from these impairments (and more) and that they were severe.  *See* (AR 27-28).  More to the point, Dr. Cantone's "Current Mental Status Observation" (within the Assessment) indicated that Petitioner (1) had good comprehension and organized thought processes; (3) was coherent; (4) had no suicidal ideations, grandiose, or suspicious thoughts; (5) was not somatic, aggressive, or delusional; (6) maintained no illusions, anxiety,[3] hallucinations, or anger; (7) had fair concentration and intact reasoning; (8) had good immediate, short, and long term memory; and (9) had good judgment and insight.  *See* (AR 684).  Nowhere within the Assessment did Dr. Cantone suggest – as he did in the April 8, 2013 "Mental Capacity Assessment" – that Petitioner had serious limitations in completing a normal workday/workweek without interruptions stemming from difficulties with her mental health.  *Compare* (AR 684), *with* (AR 765); *see also* (AR 680) (12/17/12 treatment note indicating that "Gross mental status is normal. [No acute distress].  Patient is pleasant and engages easily.  Good eye contact.  SOME anxiety present.

---

[3]  At the same time, Dr. Cantone found Petitioner's emotions/affect to be "depressed, anxious/tearful at times."  (AR 684).

**MEMORANDUM DECISION AND ORDER - 15**

Well groomed and good hygiene.  Cooperative.  Insight is good.  Judgement is good.  Stays on task with thought process, pressured speech with normal tone and volume.  No tremors or tics appreciated.") (capitalization in original); (AR 730) (1/24/13 treatment note indicating same); (AR 729) (1/28/13 treatment note indicating same, in addition to being "tearful"); (AR 727) (2/5/13 treatment note indicating same, except "no anxiety present"); (AR 761) (2/25/13 treatment note indicating same, except "no anxiety present" and "normal gait"); (AR 759) (3/25/13 treatment note indicating same, except "no anxiety present" and "normal gait").

The ALJ also described that Dr. Cantone's opinions are inconsistent with the medical record.  Medical psychologist, Mack Stephenson, Ph.D., opined that Petitioner had no limitations in activities of daily living, concentration, and social functioning.  (AR 97).  Michael Dennis, Ph.D, reviewed Dr. Stephenson's opinion, finding that Petitioner had mild limitations in activities of daily living, concentration, and social functioning.  (AR 111).  The ALJ addressed these opinions as follows:

> In social functioning, the claimant has mild to moderate difficulties.  The claimant indicated that she spends time with others and attends church twice a month.  Additionally, the claimant reported that she has no problems getting along with family, friends, neighbors, or authority figures.  After reviewing the medical evidence of record, the state agency psychological consultant, Michael Dennis, Ph.D., indicated that the claimant had only a mild limitation in this area.  For this reason, the undersigned finds that the claimant has a mild to moderate limitation in this area.
>
> With regard to concentration, persistence or pace, the claimant has mild to moderate difficulties.  With the exception of a few exacerbations, medical records consistently indicate that the claimant's though processes and speech were normal and her insight and judgment were good.  After reviewing the medical evidence of record, the state agency psychological consultant, Dr. Dennis, indicated that the claimant had only a mild limitation in this area.  For this reason, the undersigned finds that the claimant has a mild to moderate limitation in this area.

(AR 29).

**MEMORANDUM DECISION AND ORDER - 16**

With all this in mind, there is no question that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ) that no doubt impact her ability to work; however, it cannot be said that the ALJ failed to provide specific legitimate reasons for rejecting Dr. Wright's, Dr. Melvin's, and Dr. Cantone's opinions. No doubt the opinions of these providers were not given the weight Petitioner would have preferred; however, they clearly were considered in the context of the surrounding medical record.

In this setting, the Court's duty is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are inconsistent treatment notes and conflicting medical opinions which gave rise to the ALJ's decisions on how to consider the opinions of Drs. Wright, Melvin, and Cantone. His decision to discount and give little weight to such opinions is supported by clear and convincing, specific, and legitimate reasons for doing so. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this court will not substitute its judgment for that of the ALJ's even if this court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

2.    Petitioner's Credibility

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary

**MEMORANDUM DECISION AND ORDER - 17**

techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* SSR 96-7p, *available at* 1996 WL 374186 (discussed *supra*).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

Here, Petitioner alleges that she suffers from medical conditions that cause her to experience headaches, severe pain, numbness, fatigue, weakness, and difficulty sitting, standing, walking, kneeling, lifting, squatting, bending, reaching, stair climbing, remembering, concentrating, completing tasks, and understanding.  *See, e.g.*, (AR 281-89).  She confirmed as much at her hearing, testifying that she was limited to standing or sitting for approximately 30 minutes each, and lifting up to 10 to 15 pounds.  She reported spending most of the day sitting in her recliner, with headaches so severe that she has to lie down for hours and days at a time.  *See* (AR 53, 58-60).

The ALJ, however, concluded that Petitioner's daily activities were inconsistent with her allegations of disabling symptoms and limitations, pointing out that she generally handles her

**MEMORANDUM DECISION AND ORDER - 18**

personal care needs, can prepare simple meals, performs basic household chores, drives a car, shops for groceries, pays bills, uses a checkbook, and maintains the ability to count change. *See* (AR 31) (citing (AR 282-83)).[4]  Elsewhere in the record are references to Petitioner taking several trips to Arizona to her and her husband's "other home." *See* (AR 645, 730, 761).  And, in January 2012, Petitioner reported no joint pains, muscle weakness, back pain, or difficulties walking (*see* (AR 384)), and said that she exercised to an "aerobic exercise video" in February, March, May, June, and November 2012. *See* (AR 481, 489, 494, 497, 645).  In other words, the ALJ appropriately did not reject Petitioner's complaints that she suffers from certain impairments.  Rather, by discussing her daily activities (including those reflected in the medical record), his focus was on Petitioner's claim that she cannot work *because* those impairments allegedly limit her ability to work. *See, e.g.*, *Madrid v. Colvin*, 2016 WL 1161978 at *10, n.8 (N.D. 2016) ("The Ninth Circuit has held that "the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  As discussed, herein, the ALJ did not reject Plaintiff's allegations that she suffers hand pain, but rather evaluated record evidence regarding Plaintiff's alleged diminished dexterity.") (quoting *Bunnell*, 947 F.2d at 346-47).

Additionally, the ALJ identified discrepancies between Petitioner's allegations and the medical evidence. *See* (AR 32) ("Turning to the medical evidence, the objective findings in this

---

[4] Shops for   Though the ALJ correctly cited the record, it is arguably incomplete in that Petitioner claims to only take showers because she is unable to get in and out of the tub; her husband helps shave her, cooks for her, and double-checks everything she does. *See* (AR 282, 285).  If this represented the sole basis in which the ALJ challenged Petitioner's credibility, it would not be enough.  However, these limited daily activities, coupled with medical evidence calling into question the disabling effects of her impairments, provides ample support for the ALJ's credibility determination. *See supra*.

**MEMORANDUM DECISION AND ORDER - 19**

case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. . . .   [D]espite [findings of disc disease, elevated blood sugar levels, headaches, and back and neck pain], physical examinations repeatedly failed to indicate disabling symptoms and limitations as a result.").   The ALJ did this in systematic fashion, detailing medical records from December 2011 to February 2013, including records submitted after the hearing.  *See* (AR 32-34); *see also supra*.  Ultimately, the ALJ concluded that these records suggested that Petitioner's statements concerning the limiting effects of her impairments were not entirely credible.  *See* (AR 36) ("The credibility of the claimant's allegations is weakened by inconsistencies between her allegations, her statements regarding daily activities, and the medical evidence.").

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible.  This is not to say that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations, or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of her position.  While such conflicting evidence may not have been given the weight Petitioner would have preferred, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed as to such conclusions, on the record here and the justifications provided.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).  Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

**MEMORANDUM DECISION AND ORDER - 20**

3.      The ALJ's RFC Analysis Was Proper

Because the ALJ properly considered the medical record (including Petitioner's treating physicians) and Petitioner's credibility, his RFC analysis was proper.  Relatedly, there is no basis to conclude that his determination that Petitioner was able to perform sedentary work (and that such work existed in significant numbers in the national economy) was improper.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

///

///

**MEMORANDUM DECISION AND ORDER - 21**

## V.  <u>ORDER</u>

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **March 31, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**